1

2

3

4

5

6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

7

KAREN DALENE MARCHAND,

8

Plaintiff,

No.  2:16-cv-00156-RHW

9

v.

10

NANCY A. BERRYHILL
(PREVIOUSLY COLVIN),
Acting Commissioner of Social
Security,[1]

**ORDER GRANTING
DEFENDANT'S MOTION FOR
SUMMARY JUDGMENT**

11

12

13

Defendant.

14

15

16

17

18

        Before the Court are the parties' cross-motions for summary judgment, ECF

Nos. 13 & 14. Plaintiff Karen Dalene Marchand brings this action seeking judicial

review, pursuant to 42 U.S.C. § 405(g), of the Commissioner's final decision,

which denied her application for Supplemental Security Income under Titles II and

Title XVI of the Social Security Act, 42 U.S.C. § 1381-1383F.  After reviewing the

19

20

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on
January 20, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil
Procedure, Nancy A. Berryhill is substituted for Carolyn W. Colvin as the
defendant in this suit. No further action need be taken to continue this
suit. 42 U.S.C. § 405(g).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 1**

administrative record and briefs filed by the parties, the Court is now fully

informed. For the reasons set forth below, the Court **GRANTS** Defendant's

Motion for Summary Judgment.

## I.    Jurisdiction

Ms. Marchand filed her applications for disability and disability insurance

benefits on December 15, 2011. AR 235-36.  Her alleged onset date is March 1,

2010. AR 235. Her application was initially denied on March 27, 2012, AR 72-

101, and on reconsideration on June 12, 2012, AR 102-129.

Administrative Law Judge ("ALJ") Lori L. Freund held a hearing on

December 11, 2013. AR 32-71. On October 22, 2014, the ALJ issued a decision

finding Ms. Marchand ineligible for disability benefits. AR 11-25. The Appeals

Council denied Ms. Marchand's request for review on January 19, 2016, AR 1-3,

making the ALJ's ruling the "final decision" of the Commissioner.

Ms. Marchand timely filed the present action challenging the denial of

benefits on May 16, 2016. ECF No. 3. Accordingly, Ms. Marchand's claims are

properly before this Court pursuant to 42 U.S.C. § 405(g).

## II.    Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any

substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  A claimant shall be determined to be

under a disability only if the claimant's impairments are of such severity that the

claimant is not only unable to do his previous work, but cannot, considering

claimant's age, education, and work experience, engage in any other substantial

gainful work that exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A) &

1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process

for determining whether a claimant is disabled within the meaning of the Social

Security Act.  20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *Lounsbury v.*

*Barnhart,* 468 F.3d 1111, 1114 (9th Cir. 2006).

Step one inquires whether the claimant is presently engaged in "substantial

gainful activity."  20 C.F.R. §§ 404.1520(b) & 416.920(b).  Substantial gainful

activity is defined as significant physical or mental activities done or usually done

for profit.  20 C.F.R. §§ 404.1572 & 416.972.  If the claimant is engaged in

substantial activity, he or she is not entitled to disability benefits.  20 C.F.R. §§

404.1571 & 416.920(b).  If not, the ALJ proceeds to step two.

Step two asks whether the claimant has a severe impairment, or combination

of impairments, that significantly limits the claimant's physical or mental ability to

do basic work activities.  20 C.F.R. §§ 404.1520(c) & 416.920(c).  A severe

impairment is one that has lasted or is expected to last for at least twelve months, and must be proven by objective medical evidence.  20 C.F.R. §§ 404.1508-09 & 416.908-09.  If the claimant does not have a severe impairment, or combination of impairments, the disability claim is denied, and no further evaluative steps are required.  Otherwise, the evaluation proceeds to the third step.

Step three involves a determination of whether any of the claimant's severe impairments "meets or equals" one of the listed impairments acknowledged by the Commissioner to be sufficiently severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526 & 416.920(d), 416.925, 416.926; 20 C.F.R. § 404 Subpt. P. App. 1 ("the Listings").  If the impairment meets or equals one of the listed impairments, the claimant is *per se* disabled and qualifies for benefits.  *Id.*  If the claimant is not *per se* disabled, the evaluation proceeds to the fourth step.

Step four examines whether the claimant's residual functional capacity enables the claimant to perform past relevant work.  20 C.F.R. §§ 404.1520(e)-(f) & 416.920(e)-(f).  If the claimant can still perform past relevant work, the claimant is not entitled to disability benefits and the inquiry ends.  *Id.*

Step five shifts the burden to the Commissioner to prove that the claimant is able to perform other work in the national economy, taking into account the claimant's age, education, and work experience. *See* 20 C.F.R. §§ 404.1512(f),

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 4**

1  404.1520(g), 404.1560(c) & 416.912(f), 416.920(g), 416.960(c).  To meet this

2  burden, the Commissioner must establish that (1) the claimant is capable of

3  performing other work; and (2) such work exists in "significant numbers in the

4  national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.960(c)(2); *Beltran v. Astrue,*

5  676 F.3d 1203, 1206 (9th Cir. 2012).

6  ### III.    Standard of Review

7         A district court's review of a final decision of the Commissioner is governed

8  by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited, and the

9  Commissioner's decision will be disturbed "only if it is not supported by

10  substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1144,

11  1158-59 (9th Cir. 2012) (citing § 405(g)).  Substantial evidence means "more than

12  a mere scintilla but less than a preponderance; it is such relevant evidence as a

13  reasonable mind might accept as adequate to support a conclusion." *Sandgathe v.*

14  *Chater*, 108 F.3d 978, 980 (9th Cir.1997) (quoting *Andrews v. Shalala*, 53 F.3d

15  1035, 1039 (9th Cir. 1995)) (internal quotation marks omitted).  In determining

16  whether the Commissioner's findings are supported by substantial evidence, "a

17  reviewing court must consider the entire record as a whole and may not affirm

18  simply by isolating a specific quantum of supporting evidence."  *Robbins v. Soc.*

19  *Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock v. Bowen*, 879

20  F.2d 498, 501 (9th Cir. 1989)).

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 5**

1    In reviewing a denial of benefits, a district court may not substitute its

2    judgment for that of the ALJ. *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir.

3    1992). If the evidence in the record "is susceptible to more than one rational

4    interpretation, [the court] must uphold the ALJ's findings if they are supported by

5    inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104,

6    1111 (9th Cir. 2012); *see also Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

7    2002) (if the "evidence is susceptible to more than one rational interpretation, one

8    of which supports the ALJ's decision, the conclusion must be upheld"). Moreover,

9    a district court "may not reverse an ALJ's decision on account of an error that is

10   harmless." *Molina*, 674 F.3d at 1111. An error is harmless "where it is

11   inconsequential to the [ALJ's] ultimate nondisability determination." *Id.* at 1115.

12   The burden of showing that an error is harmful generally falls upon the party

13   appealing the ALJ's decision. *Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009).

14            **IV.    Statement of Facts**

15   Karen Marchand was born in 1962 and has at least a high school education.

16   AR 23. She has previous work experience as a receptionist, construction worker,

17   teacher aide, farm worker, cashier, and janitor. *Id.*

18   Ms. Marchand alleges numerous physical and mental impairments, including

19   obesity, depression, hypothyroidism, pain disorder, and schizoid personality

20

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 6**

disorder. ECF No. 13 at 3. She states that her mental impairments began shortly

after an incident in April 2009 involving police officers. *Id.*

## V.    The ALJ's Findings

The ALJ determined that Ms. Marchand was not under a disability within

the meaning of the Act from March 1, 2010, through the date of the decision. AR

25.

**At step one**, the ALJ found that Ms. Marchand had not engaged in

substantial gainful activity since March 1, 2010, her alleged onset date (citing 20

C.F.R. §§ 404.1571 *et seq*. and 416.971 *et seq*.). AR 13.

**At step two**, the ALJ found Ms. Marchand had the following severe

impairments: obesity, bilateral leg edema, hypothyroidism, major depressive

disorder, pain disorder with psychological factors and a general medical condition,

and schizoid personality disorder (citing 20 C.F.R. §§ 404.1520(c) and

416.920(c)). AR 13-15.

At **step three**, the ALJ found that Ms. Marchand did not have an impairment

or combination of impairments that meets or medically equals the severity of one

of the listed impairments in 20 C.F.R. §§ 404, Subpt. P, App. 1. AR 15-18.

At **step four**, the ALJ found Ms. Marchand had the following residual

functional capacity:  She can perform light work, except "she could frequently

stoop, kneel, crouch, and climb ramps or stairs, occasionally crawl, and never

climb ladders, ropes, or scaffolds; she should avoid concentrated exposure to extreme cold, excessive vibration, and hazards such as moving machinery and unprotected heights; she would be limited to simple, routine, and repetitive tasks; she would work best away from the public; she could have superficial contact with co-workers and supervisors but could not perform tandem tasks; she could tolerate no more than occasional changes in the work setting or tasks; and she could not be required to perform production-rate or quota-based work." AR 18-23.

The ALJ determined that Ms. Marchand could not perform her past relevant work as a receptionist, construction worker, teacher aide, farm worker, cashier, and janitor. AR 23.

At **step five**, the ALJ found that in light of her age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Ms. Marchand can perform. AR 24-25. These include Housekeeping, Cleaner; Sorter, Agricultural Produce; Cafeteria Attendant; Cannery Worker; and Marker, Price. *Id.* The ALJ consulted a vocational expert in making this determination. *Id.*

## VI.    Issues for Review

Ms. Marchand argues that the Commissioner's decision is not free of legal error and not supported by substantial evidence. Specifically, she argues the ALJ erred by: (1) improperly rejecting the opinions of Ms. Marchand's examining

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 8**

providers Drs. Catherine MacLennan, Ph.D., and Stephen Rubin, Ph.D.; (2)

improperly rejecting Ms. Marchand's subjective complaints; and (3) failing to

conduct an adequate step five analysis. ECF No. 13 at 7.

## VII. Discussion

### A. The ALJ properly evaluated the medical evidence, including the opinions of Drs. MacLennan and Rubin.

### 1. Legal Standard.

The Ninth Circuit has distinguished between three classes of medical

providers in defining the weight to be given to their opinions: (1) treating

providers, those who actually treat the claimant; (2) examining providers, those

who examine but do not treat the claimant; and (3) non-examining providers, those

who neither treat nor examine the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th

Cir. 1996) (as amended).

A treating provider's opinion is given the most weight, followed by an

examining provider, and finally a non-examining provider. *Id*. at 830-31. In the

absence of a contrary opinion, a treating or examining provider's opinion may not

be rejected unless "clear and convincing" reasons are provided. *Id*. at 830. If a

treating or examining provider's opinion is contradicted, it may only be discounted

for "specific and legitimate reasons that are supported by substantial evidence in

the record." *Id*. at 830-31.

1    The ALJ may meet the specific and legitimate standard by "setting out a

2    detailed and thorough summary of the facts and conflicting clinical evidence,

3    stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881

4    F.2d 747, 751 (9th Cir. 1989) (internal citation omitted). When rejecting a treating

5    provider's opinion on a psychological impairment, the ALJ must offer more than

6    his or her own conclusions and explain why he or she, as opposed to the provider,

7    is correct. *Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988).

8    **2. Dr. MacLennan.**

9    Dr. MacLennan evaluated Ms. Marchand in May 2013. AR 564-596. At the

10   evaluation, Dr. MacLennan performed multiple psychological tests. AR 570-73.

11   Cognitive testing demonstrated that Ms. Marchand's cognitive abilities were in the

12   borderline to low average range, her memory skills were in the low average to

13   average range, and her intelligence was within the expected range with a weakness

14   in basic math abilities. AR 570-71. Personality testing was less reliable, however,

15   as Dr. MacLennan noted responses outside of the normal range, "suggesting that

16   she may not have answered in a completely forthright manner." AR 571. Dr.

17   MacLennan also noted significant issues with hostility. AR 572.

18   Dr. MacLennan described alternating periods of anger, tears, and laughter

19   throughout their visit. AR 567. Dr. MacLennan also noted "hyperverbal" speech

20   that was "fast paced, high pitched, and difficult to understand" that alternated with

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 10**

normal volume, pace, and fluency. AR 568. Dr. MacLennan found Ms.

Marchand's thinking to be nonlinear. *Id.* Dr. MacLennan opined there were likely

multiple diagnoses, including major depressive disorder, pain disorder with

medical factors and psychological factors, and schizoid personality disorder. AR

574-75.

Dr. MacLennan also discussed "indications of malingering or factitious

behavior other than some possible overreporting of symptoms and problems on the

PAI." AR 575. She did not further discuss this finding, but it strongly influenced

the ALJ. ALJ Freund gave significant weight generally to the objective findings of

Dr. MacLennan, but she did not credit the conclusions reached because they were

based possibly on malingering behavior. AR 22.

An ALJ may properly discredit a doctor's opinion if it is contradicted by

objective evidence or other findings. *See Bayliss v. Barnhart*, 427 F.3d 1211, 1216

(finding that it is a clear and convincing reason to reject a doctor's opinion when it

was contradicted by doctor's own observations and opinions). Dr. MacLennan

does not account for how her own recorded observations of malingering and

overreporting in her findings. The Court finds no error in ALJ Freund's decision to

accept only Dr. MacLennan's objective findings and not those that are internally

inconsistent or otherwise unreliable.

*//*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 11**

**3. Dr. Rubin.**

After Ms. Marchand's hearing, ALJ Freund provided interrogatories to Dr. Rubin, who reviewed the full record through Exhibit 20F and provided a medical opinion based on this review. AR 22, 916-28. Dr. Rubin opined that Ms. Marchand would have mild difficulties understanding and remembering complex instructions, mild difficulties carrying out complex instructions, moderate difficulties making judgments on complex work-related decisions, moderate difficulties in maintaining social function, and mild difficulties in maintaining concentration, persistence, or pace. AR 921, 925. ALJ Freund assigned significant weight to Dr. Rubin's opinion because she found it to be consistent with the record, which he had the ability to review nearly in its entirety. AR 22.

Ms. Marchand alleges that the ALJ erred by "ignor[ing] important limitations imposed by Dr. Rubin." ECF No. 13 at 12. Specifically, Ms. Marchand points to difficulties with supervisors and a general history of failing at some tasks. *Id.*

To the contrary, the ALJ provided numerous restrictions within the residual functional capacity that reflects the mental limitations set forth by Dr. Rubin. Ms. Marchand was limited to simple, routine, and repetitive tasks, which accommodates for Dr. Rubin's proposed limitations regarding complex tasks and Ms. Marchand's difficulties with concentration, persistence, and pace. *See Stubbs-*

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 12**

1  *Danielson v. Astrue*, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that limitations

2  to simple tasks could account for even moderate limitations in concentration,

3  persistence, and pace). She was further prohibited from production-rate or quota-

4  based work, which would avoid issues with complex tasks and pace. With regard

5  to her struggles with supervisors, the ALJ limited Ms. Marchand to only superficial

6  contact with co-workers and supervisors and a bar on tandem tasks. AR 19. These

7  limitations within the residual functional capacity sufficiently account for the

8  limitations proposed by Dr. Rubin and align with his opinion. The Court finds no

9  error.

10    **B.  The ALJ properly evaluated Ms. Marchand's credibility.**

11    An ALJ engages in a two-step analysis to determine whether a claimant's

12  testimony regarding subjective symptoms is credible. *Tommasetti,* 533 F.3d at

13  1039. First, the claimant must produce objective medical evidence of an underlying

14  impairment or impairments that could reasonably be expected to produce some

15  degree of the symptoms alleged. *Id.* Second, if the claimant meets this threshold,

16  and there is no affirmative evidence suggesting malingering, "the ALJ can reject

17  the claimant's testimony about the severity of [his] symptoms only by offering

18  specific, clear, and convincing reasons for doing so." *Id.*

19    In this case, there is affirmative evidence suggesting malingering. Dr.

20  MacLennan described overreporting and factitious behavior by Ms. Marchand in

1    her report. AR 575. Dr. Rubin also noted a great deal of "controversy" in Ms.

2    Marchand's record and that "[a]t times, [Ms. Marchand] seems to exaggerate her

3    symptomatology and has been quite diligent in seeking out professionals to work

4    with or help her." AR 919. This affirmative evidence alone is sufficient to support

5    a negative credibility determination. *See Smolen v. Chater*, 80 F.3d 1273, 1283-84

6    (9th Cir. 1996) (finding of either affirmative evidence of malingering or clear and

7    convincing reasons may support a rejection of a claimant's testimony).

8         Moreover, the ALJ also provided clear and convincing reasons for

9    discrediting Ms. Marchand's testimony in addition to the evidence of malingering.

10   In weighing a claimant's credibility, the ALJ may consider many factors, including,

11   "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation

12   for lying, prior inconsistent statements concerning the symptoms, and other

13   testimony by the claimant that appears less than candid; (2) unexplained or

14   inadequately explained failure to seek treatment or to follow a prescribed course of

15   treatment; and (3) the claimant's daily activities." *Smolen,* 80 F.3d at 1284. ALJ

16   Freund pointed to numerous activities that did not support the level of impairment

17   claimed, including social interactions, job interviews, shopping, bicycle rides, the

18   ability to maintain a 3.0 grade point average in her last semester and, most

19   significantly, Ms. Marchand's completion of an associate's degree. AR 21-22.

20   Further, the ALJ noted that the repeated efforts by Ms. Marchand to get a job,

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 14**

including applications and interviews, indicated that she believed herself capable

of working, which is inconsistent with her asserted limitations. AR 21.

Because the ALJ provided both affirmative evidence of malingering and

clear and convincing reasons regarding Ms. Marchand's credibility, the Court finds

no error in the weight given to Ms. Marchand's subjective complaints.

**C. The ALJ did not fail to meet her step five burden.**

Ms. Marchand attempts to reargue the same issues in her challenge to the

ALJ's step five analysis. She asserts that the hypothetical posed to the vocational

expert was incomplete because it failed to account for the limitations posed by Drs.

MacLennan and Rubin and for the testimony by Ms. Marchand regarding her

absenteeism. ECF No. 13 at 14-15. These issues have already been addressed and

the Court has found no error. *See supra* at 9-15.

### VIII.  Conclusion

Having reviewed the record and the ALJ's findings, the Court finds the

ALJ's decision is supported by substantial evidence and free of legal error.

Accordingly, **IT IS ORDERED:**

1.  Plaintiff's Motion for Summary Judgment, **ECF No. 13**, is **DENIED.**

2.  Defendant's Motion for Summary Judgment, **ECF No. 14,** is

**GRANTED.**

ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY
JUDGMENT ~ 15

3.  The District Court Executive is directed to enter judgment in favor of Defendant.

**IT IS SO ORDERED.** The District Court Executive is directed to enter this Order, forward copies to counsel and **close the file**.

**DATED** this 13th day of February, 2017.

<u>s/Robert H. Whaley</u>
ROBERT H. WHALEY
Senior United States District Judge

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT ~ 16**